ORDERED.

Dated: October 11, 2018

*Cynthia C. Jackson*
Cynthia C. Jackson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

Tamara D. Harris,	Case No.: 6:17-bk-06716-CCJ
	Chapter 7
　　　　Debtor.
_____/

MEMORANDUM OPINION

This case came before the Court for trial to consider the United States Trustee's Motion for Contempt, Sanctions: Disgorgement, the Assessment of Fines and Statutory Damages, and for Additional Injunctive Relief (the "Motion for Contempt"; Doc. No. 7). By the Motion, the United States Trustee ("UST") requests that the Court impose sanctions and statutory damages against Mr. Warren Scott Sizinski ("Sizinski"), a bankruptcy petition preparer, for failing to comply with this Court's orders and for violating Section 110 of the Bankruptcy Code in this case. Having considered the Motion, the evidence and the argument of counsel present at trial, the Court finds that the Motion should be granted for the reasons stated below. The Court makes the following finding of facts and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

1

<u>Findings of Fact</u>

Sizinski prepares for a fee, bankruptcy petitions and other related documents that are filed in bankruptcy courts by debtors seeking relief under the Bankruptcy Code. Sizinski is not an attorney and does not work for one. By providing these type of services, Sizinski is known as a bankruptcy petition preparer ("BPP"). Sizinski offers BPP services individually or under the names of several businesses, including "Themis Partners", "Themis Group" or "Ch7Bankruptcies." Sizinski operates his BPP business in the Melbourne, Florida area.[1] In at least five districts throughout the United States[2], debtors' bankruptcy filings disclose Sizinski as the BPP for their case. And one district--the United States Bankruptcy Court for Southern District of Mississippi--has found Sizinski in willful contempt of its orders and has enjoined Sizinski from acting as a BPP in its district.[3]

In 2014, the UST initiated an adversary proceeding before this Court by filing a complaint against Sizinski in the Chapter 7 bankruptcy case of *In re Bridgewater*.[4] By the three count complaint, the UST requested that the Court disgorge Sizinski's excessive BPP fees pursuant to Section 110(h)(3)(A)(i) of the Bankruptcy Code, find that Sizinski violated Section 110(e)(2)(B) of the Bankruptcy Code by providing legal advice, and impose an injunction against Sizinski and his businesses from providing BPP services or legal advice pursuant to Section 110(j) of the Bankruptcy Code.[5] To support the relief requested, the UST alleged that Sizinski took over six months to prepare the debtor's bankruptcy papers, Sizinski charged the debtor $500 for BPP fees, and that Sizinski provided the debtor with legal advice by selecting the debtor's property exemptions and by advising the debtor that a Chapter 7 bankruptcy allows a debtor to retain a vehicle with a payment default.[6] Sizinski did not answer the complaint and the clerk entered a default.

On October 15, 2014, the Court entered a Final Judgment in favor of the UST and against Sizinski on all counts of the complaint (the "Bridgewater Judgment").[7] The Bridgewater Judgment required Sizinski to disgorge $500 to the debtor, pay a fine to the UST for the Section 110 violations, and permanently enjoined Sizinski and his businesses from providing BPP services or legal advice in this District.[8] The Bridgewater Judgment stated "[i]n the event that Warren Sizinski does not comply with any paragraph in this Final Judgment, the Court may hold Warren Sizinski in contempt of Court. Penalties for contempt of Court include, but are not limited to, the assessment of a monetary fine, and arrest and imprisonment."[9] The clerk served Sizinski with the Bridgewater Judgment at the address Sizinski listed on the debtor's bankruptcy schedules and another known address for Sizinski. Sizinski did not appeal the Bridgewater Judgment.

Despite this injunction, for the next three years, Sizinski continued to provide debtors with BPP services. In the Orlando Division alone, Sizinski provided debtors with BPP services in 59 bankruptcy cases filed after entry of the Bridgewater Judgment (the "Post-Bridgewater Cases"). In each of the Post-Bridgewater Cases, Sizinski signed statements under penalty of perjury admitting that he served as the BPP in the case and acknowledging receipt of payment for services performed as BPP in the case. The debtors in the Post-Bridgewater Cases paid Sizinski fees totaling $34,544 for his BPP services.[10]

In two of the Post-Bridgewater Cases (*In re Frazier* and *In re Whitehead*), the bankruptcy court entered orders to show cause why Sizinski should not be held in contempt for failing to comply with the Bridgewater Judgment.[11] Sizinski did not appear at the hearings, and the bankruptcy court entered orders on the orders to show cause.[12] Both orders refer to the permanent injunction provided for in the Bridgewater Judgment. In the *Frazier* case, the order also directed Sizinski to pay a fine.[13] And in the *Whitehead* case, the order also directed Sizinski to disgorge his BPP fees to the debtor.[14]

Sizinski paid the fine in the *Frazier* case. It is unknown if Sizinski disgorged his BPP fee to Ms. Whitehead.

The Post-Bridgewater Cases also include this bankruptcy case filed by Tamara Harris ("Harris"). Around March 2017, Harris saw a road side advertisement offering bankruptcy assistance. Harris contacted the information on the advertisement that led to Sizinski. Harris and Sizinski had some telephone and emails discussions. During these discussions, Sizinski offered to provide Harris with BPP services for $599, and told Harris that he could complete the BPP services in a few weeks.

On March 22, 2017, Harris met Sizinski at a hotel business center in Melbourne, Florida. Sizinski spoke with Harris about filing a bankruptcy case. During their discussion, Sizinski helped Harris decide if she should file a bankruptcy case. Sizinski told Harris the differences between chapter 7 and chapter 13 bankruptcy cases, and helped Harris pick the bankruptcy chapter to file. Sizinski spoke to Harris about the different types of debt (secured, unsecured, or priority) and the debts she could discharge. Sizinski advised Harris how to value her property and what property she could keep with a bankruptcy filing. Sizinski gave Harris instructions on how to obtain the information needed to complete the bankruptcy paperwork and warned Harris that a bankruptcy trustee may request certain documents. Sizinski further discussed with Harris the requirement to obtain consumer creditor counseling before filing a bankruptcy case. In return, Harris paid Sizinski $599 at the meeting. Sizinski did not give Harris a written notice disclosing that a BPP is not an attorney and may not provide certain services.

About a month after their meeting, Harris gave Sizinski the bankruptcy paperwork needed to prepare the bankruptcy schedules and statements. Sizinski did not deliver the completed bankruptcy schedules and statements to Harris as promised. Harris then began calling and

emailing Sizinski concerning the completion of her bankruptcy paperwork.  Sizinski either ignored Harris' communications or gave excuses why he could not complete the bankruptcy paperwork.

Almost five months later, Sizinski finally gave Harris the completed bankruptcy schedules and statements.  Upon receipt, Harris noticed that Sizinski provided the answers to some questions on the bankruptcy schedules and statements.  And Sizinski selected the exemptions for Harris' property without her instruction.  The bankruptcy schedules and statements included a written notice disclosing that a BPP is not an attorney and may not provide certain services.  The Bankruptcy Petition Preparer's Notice, Declaration, and Signature (Official Form 119), and the Disclosure of Compensation of Bankruptcy Petition Preparer did not have Sizinski's full social security number on them.  Harris signed the bankruptcy schedules and statements and then filed a Chapter 7 bankruptcy case on October 20, 2017 (the "Harris Case").[15]

Shortly after the filing of the Harris Case, the UST filed the Motion for Contempt. By the Motion for Contempt, the UST requests that the Court enter an order (i) finding Sizinski in contempt for violating the Bridgewater Judgement; (ii) sanctioning Sizinski by requiring him to disgorge all monies Sizinski received for BPP services after entry of the Bridgewater Judgment; (iii) enjoining Siziniski and his businesses from providing BPP services anywhere in the United States; and (iv) sanctioning Siziniski in the Harris Case for violating Section 110 of the Bankruptcy Code.

The Court held a preliminary hearing on the Motion for Sanctions.  Sizinski did not appear at the preliminary hearing.  Because the Court could not accommodate a trial on the Motion for Sanctions for three months, the Court entered an Interim Order on the Motion for Sanctions (the "Interim Order").[16]  The Interim Order states that Sizinski "remains permanently enjoined from participating in the business of preparing bankruptcy documents in any way, shape, form or

5

manner in this District, and from providing any legal advice regarding bankruptcy" and that the Court will impose sanctions in the amount of $1,000 for every case filed in this District that lists Sizinski as BPP until the trial on the Motion for Sanctions.[17]

After entry of the Interim Order, Sizinski continued to provide debtors with BPP services in four bankruptcy cases filed in the Orlando Division of the Middle District of Florida (the "Post-IO Cases"). In three of the Post-IO cases, Sizinski signed statements under penalty of perjury admitting that he served as the BPP in the case and acknowledging receipt of payment for his BPP services. Sizinski received a total of $1,797 for his BPP services in three cases of the Post-IO Cases. The fourth case is *In re Lowery*.[18]

Mr. Randolph Lowery ("Lowery") discovered Sizinski's BPP services through a personal referral. On December 11, 2017, Lowery met with Sizinski at a hotel business center in Melbourne, Florida. Sizinski spoke with Lowery about filing a bankruptcy case. Lowery filled out some bankruptcy paperwork at the meeting and paid Sizinski $749 for Sizinski's BPP services. After some time, Lowery attempted contacting Sizinski on numerous occasions to obtain the completed bankruptcy schedules and statements. Sizinski eventually responded to Lowery. Sizinski told Lowery that he would complete the bankruptcy schedules and statements, but the documents would reflect that another BPP (Devin Colbert) prepared them. Lowery does not know and has never met a Devin Colbert. Sizinski warned Lowery that he could have problems with his bankruptcy case and discharge if anyone found out that he prepared the bankruptcy schedules and statements rather than Mr. Colbert. Lowery received his bankruptcy schedules and statements in March 2017 and subsequently filed a Chapter 7 bankruptcy case (the "Lowery Case"). The statements filed in the Lowery Case state that Devin Colbert is the BPP.

Sizinski did not appear at the trial on the Motion for Sanctions. At trial, the UST submitted 73 exhibits and offered the testimony of Tamara Harris and Randolph Lowery in support of the Motion for Sanctions. [The UST also requested that the Court impose sanctions for Sizinski's failure to comply with the Interim Order.]

## Conclusions of Law

Section 110 of the Bankruptcy Code regulates bankruptcy petition preparers.[19] The statute establishes a bankruptcy petition preparer's duties and imposes penalties for violations of those duties.[20] By enacting Section 110, Congress sought to create standards and penalties for bankruptcy petition preparers not employed or supervised by an attorney that Congress found were providing debtors with inept legal services and taking advantage of debtors unaware of the bankruptcy process.[21] The purpose of Section 110 is to "protect consumers from abuses by non-attorney bankruptcy petition preparers."[22] The United States Trustee, among others, has standing to file motions requesting that the court impose penalties or remedies against a bankruptcy petition preparer for violating Section 110.[23] Yet, as demonstrated by this case, twenty years after enactment of Section 110, bankruptcy petition preparers like Sizinski continue to prey on consumers.

Sizinski cannot dispute that he is a bankruptcy petition preparer subject to Section 110 of the Bankruptcy Code. A bankruptcy petition preparer is a "person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing."[24] Section 110(a)(2) states that a "document for filing" means "a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title."[25] By preparing for compensation the debtors' petitions and other documents filed in the Post-

Bridgewater Cases, the Harris Case and Post-IO Cases, and by signing the debtors' petitions as a BPP under penalty of perjury, Sizinski is a BPP as defined under Section 110(a) of the Bankruptcy Code in the Post-Bridgewater, Harris and Post-IO Cases. As to the Lowery Case, Mr. Lowery testified that Sizinski prepared for compensation the petition and other documents filed in his case, and not the individual named "Devon Colbert" listed on the petition. The Court finds Mr. Lowery's testimony credible and that Sizinski is the BPP in the Lowery Case. Accordingly, Sizinski is a BPP governed by Section 110 of the Bankruptcy Code in the Post-Bridgewater Cases, the Harris Case, the Post-IO Cases, and the Lowery Case.

### Sanctions for Violating the Bridgewater Judgment and Interim Order

Based on Sizinski's failure to comply with Section 110 of the Bankruptcy Code, this Court entered the Bridgewater Judgment and permanently enjoined Sizinski and his businesses from providing BPP services or legal advice. Sizinski violated the Bridgewater Judgement by providing BPP services in the Post-Bridgewater Cases, the Harris Case, the Post-IO Cases and the Lowery Case. To prevent further violations of the injunction stated in the Bridgewater Judgment, this Court entered the Interim Order until a trial could be held on the Motion for Sanctions.

Bankruptcy courts have inherent civil contempt powers to enforce compliance with its orders.[26] In civil contempt matters, the movant must present "clear and convincing" evidence that a court order was violated.[27] "This clear and convincing proof must also demonstrate that 1) the order was valid and lawful; 2) the order was clear, definite and unambiguous; and 3) the alleged violator had the ability to comply with the order."[28] Upon a prima facie showing that a court order was violated, the burden then shifts to the alleged violator to establish a "present inability to comply that goes beyond a mere assertion of inability…", with evidence to support that claim.[29] The purpose of civil contempt sanctions is to coerce the violator into complying with the court

8

order or to compensate the complainant for losses and expenses it incurred because of the contemptuous act.[30]

In addition, Section 105 of the Bankruptcy Code establishes the court's statutory contempt power.[31] Under Section 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[32] Thus, Section 105 "grants courts independent statutory powers to award monetary and other forms of relief . . . to the extent such awards are 'necessary and appropriate' to carry out the provisions of the Bankruptcy Code"[33]

Here, the UST has demonstrated with clear and convincing evidence that Sizinski violated the Bridgewater Judgment by providing BPP services to debtors in the Post-Bridgewater Cases, Post-IO Cases and the Lowery Case. The Bridgewater Judgment is a valid and lawful order that clearly, definitely and unambiguously enjoins Sizinski from providing BPP services or legal advice. Sizinski could comply with the Bridgewater Judgment by simply ceasing all BPP services or legal advice. Sizinski did not appear at trial and has not shown this Court a present inability to comply with the Bridgewater Judgment.

The debtors in the Post-Bridgewater Cases paid Sizinski a total of $34,544 for BPP services. The bankruptcy court has already ordered Sizinski to disgorge $599 in one of the Post-Bridgewater Cases,[34] leaving a total of $33,945 at issue. The debtors in the Post-IO Cases (including Lowery) paid Sizinski a total of $2,546 for BPP services. Because the Bridgewater Judgment enjoins Sizinski from providing BPP services, Sizinski should not have performed or collected any fees for BPP services after entry of the Bridgewater Judgment. The Court finds that the debtors in the Post-Bridgewater Cases, and Post-IO Cases (including the Lowery Case) incurred actual damages in the amount of $36,491 based on Sizinski's failure to comply with the Bridgewater Judgement. Pursuant to the Court's inherent contempt powers and Section 105 of the Bankruptcy Code, the Court will require Sizinski to disgorge all BPP fees collected after entry of

the Bridgewater Judgment (in the amount of $36,491) as sanctions for failing to comply with the Bridgewater Judgment.

Similarly, the UST has demonstrated with clear and convincing evidence that Sizinski violated the Interim Order by providing BPP services to debtors in the Post-IO Cases. The Interim Order is a valid and lawful order that clearly, definitely and unambiguously enjoins Sizinski from providing BPP services or legal advice. By simply ceasing all BPP services or legal advice, Sizinski could comply with the Interim Order. Sizinski did not appear at trial and has not shown this Court a present inability to comply with the Interim Order. The Interim Order imposes sanctions in the amount of $1,000 for every case filed in this District that lists Sizinski as BPP until the trial on the Motion for Sanctions. Accordingly, the Court sanctions Sizinski $4,000 for the four cases filed after the Interim Order.

## Section 110 Violations in the Harris Case

Sizinski, as BPP in the Harris Case, committed multiple violations of the duties imposed by Section 110 of the Bankruptcy Code.

Section 110(b)(2) requires a BPP to provide the debtor with a written notice (Official Form 119) disclosing that a BPP is not an attorney and may not provide certain services (the "Notice").[35] A BPP must provide the Notice to the debtor before accepting any fees or preparing any documents for filing.[36] Harris testified that she first paid Sizinski a $599 fee and about a month later provided Sizinski with information to prepare the bankruptcy schedules and statements. Harris stated that Sizinski gave her the bankruptcy documents sometime in September 2017- nearly five months later. The Notice filed in the Harris Case states that Harris and Sizinski signed it on September 24, 2017, the same date that Harris signed the petition and other bankruptcy documents.[37] A Notice received and signed by a debtor at the same time other bankruptcy documents are signed does not comply with Section 110(b)(2) because the Notice is not provided *before* the preparation of any

10

documents.[38] Here, the evidence demonstrates that Sizinski did not provide Harris with the Notice *before* accepting any fees or preparing any documents for filing. A BPP that fails to comply with Section 110(b) may be fined no more than $500 for each failure.[39] The Court, therefore, finds that Sizinski violated Section 110(b)(2) of the Bankruptcy Code and shall be fined $500 for the violation.

Section 110(c) requires that a BPP place an identifying number on each document prepared.[40] When the BPP is an individual, the BPP's social security number is the identifying number.[41] A BPP that lists only a portion of a social security number on a document does not satisfy the requirement of Section 110(c).[42] Here, Sizinski did not place his entire social security number on the Bankruptcy Petition Preparer's Notice, Declaration, and Signature (Official Form 119), or the Disclosure of Compensation of Bankruptcy Petition Preparer filed in the Harris Case.[43] A BPP who fails to comply with Section 110(c) may be fined no more than $500 for each failure.[44] As a result, the Court finds that Sizinski committed two violations of Section 110(c)(1) of the Bankruptcy Code and shall be fined $1,000 for the violations.

Section 110(e)(2) prohibits a BPP from providing legal advice to a potential bankruptcy debtor, and lists seven examples of legal advice, all of which are non-exclusive.[45] The examples include advising the debtor: (i) whether to file a bankruptcy petition or whether filing a Chapter 7, 11, 12, or 13 case is appropriate; (ii) whether the debtor's debts will be discharged in bankruptcy; (iii) whether the debtor can retain a home, car, or other property after filing a bankruptcy case; (iv) concerning the tax consequences of a bankruptcy case or the dischargeability of tax claims; (v) whether the debtor may or should promise to repay the debts or enter into a reaffirmation agreement with a creditor; (vi) concerning how to characterize the nature of the debtor's interest in property or the debtor's debts; or (vii) concerning bankruptcy procedures and rights.[46] A BPP

11

"who does anything beyond merely typing the petition, accompanying schedules, and other forms based solely on the information supplied by a debtor engages in the unauthorized practice of law"[47] and as a result, provides legal advice to the debtor. A BPP that does not comply with Section 110(e) of the Bankruptcy Code may be fined no more than $500 for each noncompliance.[48]

Here, Harris testified that Sizinski gave her advice that included answering questions in Harris' bankruptcy schedules and statements; telling Harris the documents a Chapter 7 trustee may request from her; answering Harris' questions about credit counseling requirements; advising Harris on how to value her assets; helping Harris determine if she should file bankruptcy; explaining to Harris the difference between chapter 7 and chapter 13 and helping Harris chose the bankruptcy chapter right for her; advising Harris if her debts would be discharged; advising Harris is she could retain her property; selecting exemptions for Harris' property without instruction;[49] and advising Harris debts were secured, unsecured, or priority. As a result of providing unauthorized legal advice, the Court finds that Sizinski committed ten violations of Section 110(e)(2) of the Bankruptcy Code and shall be fined $5,000.

Section 110(i)(1) of the Bankruptcy Code subjects a BPP to statutory sanctions if the BPP violates Section 110 or commits any act that the Court finds to be fraudulent, unfair, or deceptive.[50] If liable, the bankruptcy court shall order the BPP to pay the debtor's actual damages, $2,000 or twice the amount of the BPP's fee (whichever is greater), and reasonable attorney fees and costs.[51]

Here, Sizinski is liable to Harris for the statutory sanctions stated in Section 110(i)(1) of the Bankruptcy Code. The Court has already found that Sizinski violated several provisions of Section 110 of the Bankruptcy Code in the Harris Case. And because Sizinski was enjoined from providing BPP services at all pertinent times, the Court further finds that Sizinski committed acts that are fraudulent, unfair, or deceptive by continuing to advertise BPP services to Harris and

others, offering BPP services to Harris, providing Harris with BPP services, and failing to timely prepare Harris' bankruptcy schedules and statements as agreed. Accordingly, the Court awards Harris $2,000 under Section 110(i)(1).[52]

<div style="text-align: center;">Nationwide Injunction</div>

Section 110(j)(3) of the Bankruptcy Code allows a bankruptcy court, by motion of the court, trustee or the UST, to enjoin a BPP that has failed to comply with a prior order issued under Section 110.[53] When an injunction prohibiting certain conduct does not suffice, the bankruptcy court may enjoin a person from acting as a BPP if the person continually engages in conduct that includes violating Section 110 of the Bankruptcy Code or any other fraudulent, unfair or deceptive conduct.[54] Because Section 110(j) allows for entry of an injunction preventing a person from acting as a BPP without limitation, a nationwide injunction is authorized under Section 110(j).[55]

By continuing to act as a BPP for about 60 bankruptcy cases filed after entry of the Bridgewater Judgment, and continuing to provide debtors with legal advice as discussed in the Harris Case, Sizinski has continually engaged in conduct in violation of Section 110 of the Bankruptcy Code. Sizinski has also continually engaged in fraudulent, unfair or deceptive conduct by continuing to advertise and provide BPP services to debtors despite entry of the Bridgewater Judgment. The Court also finds troubling Sizinski's attempts to circumvent this Court's injunction by the use of an alias "Devin Colbert" in the Lowery Case and warning Lowery from revealing him as the BPP for his case. Sizinski's disregard for this Court's prior orders and the requirements imposed by Section 110 of the Bankruptcy Code demonstrate that imposing an injunction prohibiting Sizinski from engaging in further conduct violative of Section 110 would not deter future violations or misconduct here or elsewhere. At least one other bankruptcy court outside the Middle District of Florida has already sanctioned Sizinski for Section 110 violations

and entered an injunction prohibiting Sizinski from acting as a BPP before that district. Only the issuance of a permanent nationwide injunction prohibiting Sizinski from acting as a BPP in the future, by himself or through third parties, including any businesses will prevent future misconduct by Sizinski.

The Court will enter a separate order consistent with this Memorandum Opinion.


The Clerk's Office is directed to serve a copy of this order on all interested parties and Warren Sizinski at the following known addresses: Warren Sizinski, 2263 N. New Haven Avenue, Suite 107, Melbourne, FL 32904; Warren Sizinski, P.O. Box 1626, Melbourne, FL 32902; Warren Sizinski, P.O. Box 120232, Melbourne, FL 32912; Warren Sizinski, 100 Rialto Place, Suite 700, Melbourne FL 32901; Warren Sizinski, 1900 S. Harbour City Blvd., Ste. 328, Melbourne, FL 32901; Warren Sizinski, 7777 N. Wickham Road, #12-217, Melbourne, FL 32940; Warren Sizinski, 5130 Commercial Drive, Suite H, Melbourne, FL 32940; and Warren Sizinski, 3711 Peacock Drive, Melbourne, FL 32904.

[1] Bankruptcy filings or testimony from debtors disclose the following addresses for Sizinski or his businesses: Warren Sizinski, 2263 N. New Haven Avenue, Suite 107, Melbourne, FL 32904; Warren Sizinski, P.O. Box 1626, Melbourne, FL 32902; Warren Sizinski, P.O. Box 120232, Melbourne, FL 32912; Warren Sizinski, 100 Rialto Place, Suite 700, Melbourne FL 32901; Warren Sizinski, 1900 S. Harbour City Blvd., Ste. 328, Melbourne, FL 32901; Warren Sizinski, 7777 N. Wickham Road, #12-217, Melbourne, FL 32940; Warren Sizinski, 5130 Commercial Drive, Suite H, Melbourne, FL 32940; and Warren Sizinski, 3711 Peacock Drive, Melbourne, FL 32904.

[2] Sizinski has provided BPP services for cases filed in the United States Bankruptcy Court for the Middle District of Florida, the United States Bankruptcy Court for the Southern District of Florida, the United States Bankruptcy Court for the Southern District of Mississippi, the United States Bankruptcy Court for the District of New Jersey, and the United States Bankruptcy Court for the District of Colorado.

[3] Ex. Nos. 1-4 (Doc. No. 29). The bankruptcy cases are *In re Sonya Bridges*, Case No. 1:12-bk-51068-KMS; *In re Darnell Holmes*, Case No. 1:12-bk-51115-KMS; *In re Angel Williams*, Case No. 1:12-bk-51301-KMS, and *In re Ran Hollis, Jr. and Vivian Hollis*, Case No. 1:12-bk-52166-KMS.

[4] *Gebhardt v. Sizinski (In re Bridgewater)*, Adv. No. 6:14-ap-00100-CCJ (Bankr. M.D. Fla. filed Aug. 8, 2014).

[5] *See id.* at Doc. No. 1.

[6] See *id.*

[7] Ex. No. 5 (Doc. No. 29).

[8] Ex. No. 5 (Doc. No. 29).

[9] Ex. No. 5 (Doc. No. 29).

[10] Ex. Nos. 9-67 (Doc. Nos. 29-32); Ex. No. 73 (Doc. No. 33).

[11] *In re Whitehead,* Case No. 6:17-bk-04054-KSJ, Doc. No. 21 (Bankr. M.D. Fla. Dec. 1, 2017); *In re Frazier,* Case No. 6:15-bk-00842-CCJ, Doc. No. 27 (Bankr. M.D. Fla. Nov. 23, 2015).

[12] *In re Frazier*, Case No. 6:15-bk-00842-CCJ, Doc. No. 36 (Bankr. M.D. Fla. April 25, 2016); *In re Whitehead,* Case No. 6:17-bk-04054-KSJ, Doc. No. 29 (Bankr. M.D. Fla. Jan. 10, 2018).

[13] *In re Frazier,* Case No. 6:15-bk-00842-CCJ, Doc. No. 36 (Bankr. M.D. Fla. April 25, 2016).

[14] *In re Whitehead,* Case No. 6:17-bk-04054-KSJ, Doc. No. 29 (Bankr. M.D. Fla. Jan. 10, 2018).

[15] *In re Harris*, Case No.: 6:17-bk-06716-CCJ (Bankr. M.D. Fla. filed Oct. 20, 2017).

[16] Doc. No. 20.

[17] *Id*.

[18] *In re Lowery,* Case No. 6:18-bk-01588-CCJ (Bankr. M.D. Fla. filed March 23, 2018).

[19] *See Gebhart v. Coburn (In re Rivera)*, 2015 WL 1743707, *2 (Bankr. M.D. Fla. April 17, 2015)(Jennemann, J.); *Turner v. Burnworth* (*In re Carrier)*, 363 B.R. 247, 254 (Bankr. M.D. Fla. 2006)(Briskman, J).

[20] *See Carrier*, 363 B.R. at 254.

[21] H.R.Rep. No. 103-835, at 56 (1994). *See also Rivera*, at *2.

[22] *In re Webbers*, 322 B.R. 216, 221 (Bankr. M.D. Fla. 2005)(Jennemann, J.).

[23] *See* 11 U.S.C. § 110(h), (i), (l).

[24] 11 U.S.C. § 110(a)(1) (2010).

[25] 11 U.S.C. § 110(a)(2).

[26] *See Gowdy v. Mitchell (In re Ocean Warrior, Inc.)*, 835 F.3d 1310, 1316 (11th Cir. 2016).

[27] *See Howard Johnson Co., Inc., v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990); *Delta Sigma Theta Sorority, Inc., v. Bivins*, 2015 WL 1400435 (M.D. Fla. March 26, 2015).

[28] *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000) (citation omitted).

[29] *Howard Johnson*, 892 F.2d at 1516 (citation omitted).

[30] *See Jove Eng'g, Inc. v. IRS (In re Jove Eng'g, Inc.)*, 92 F.3d 1539, 1557 (11th Cir. 1996).

[31] *Hardy v. United States ex rel. I.R.S.* (*In re Hardy)*, 97 F.3d 1384, 1389 (11th Cir. 1996).

[32] 11 U.S.C. § 105(a) (2010).

[33] *See Hardy,* 97 F.3d at 1389-90.

[34] *See In re Whitehead,* Case No. 6:17-bk-04054-KSJ, Doc. No. 29 (Bankr. M.D. Fla. Jan. 10, 2018).

[35] 11 U.S.C. § 110(b)(2).

[36] See 11 U.S.C. § 110(b)(2).

[37] Ex. No. 66 (Doc. No. 32).

[38] See *In re Falck*, 503 B.R. 904, 912 (Bankr. S.D. Fla. 2014).

[39] See 11 U.S.C. § 110(l)(1) (2010).

[40] *See* 11 U.S.C. § 110(c); *See also Turner v. Burnworth* (*In re Carrier)*, 363 B.R. 247, 255 (Bankr. M.D. Fla. 2006).

---

[41] *See* 11 U.S.C. § 110(c)(2)(A).

[42] *See In re Carrier*, 363 B.R. at 255; *In re Coy*, 324 B.R 393, 398-99 (Bankr. M.D. Fla. 2005)(Glenn, J.).

[43] Ex. No. 66 (Doc. No. 32).

[44] See 11 U.S.C. § 110(l)(1).

[45] *See* 11 U.S.C. § 110(e)(2)(A),(B) (2010); *In re Falck*, 503 B.R. 904, 913 (Bankr. S.D. Fla. 2014).

[46] *Id*.

[47] *In re Landry*, 250 B.R. 441, 445 (Bankr. M.D. Fla. 2000)(Jennemann, J.).

[48] See 11 U.S.C. § 110(l)(1).

[49] *See In re Falck*, 503 B.R. at 913 ("Advising of available exemptions ... or actually choosing an exemption for the debtor ... requires the exercise of legal judgment beyond the capacity and knowledge of lay persons").

[50] See 11 U.S.C. § 110(i).

[51] See 11 U.S.C. § 110(i)(1).

[52] Because Harris paid Sizinski $599 for BPP services, $2,000 is the greater of twice the amount Harris paid Sizinski for BPP services.

[53] See 11 U.S.C. § 110(j)(3) (2010).

[54] See 11 U.S.C. § 110(j)(2)(B).

[55] *See Ross v. Smith (In re Gavin)*, 181 B.R. 814, 825 (Bankr. E.D. Pa. 1995); *See also In re Falck*, 503 B.R. 904, 915 (Bankr. S.D. Fla. 2014)(entering injunction prohibiting Defendants from acting as BPP in any District of the United States).